UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL G. ROBINSON and MICHELLE
ROBINSON,

                Plaintiffs,

     v.

H&R BLOCK BANK, FSB, SAND
CANYON CORPORATION f/k/a OPTION
ONE MORTGAGE CORPORATION, and
MELISSA HIVELY,

                Defendants

Civil Action No. 1:12-cv-04196-SJ-SMG

**DECLARATION OF
GREG QUARLES**

I, GREG QUARLES, declare as follows:

1.     I am the President of H&R Block Bank, FSB ("Block Bank").

2.     I respectfully submit this declaration in support of Block Bank's motion for summary judgment. Prior to executing this declaration, I have reviewed the Declaration of Dale M. Sugimoto, President of Sand Canyon Corporation, ("Dec. of D. Sugimoto") which I understand will be filed simultaneously with this declaration. I have also reviewed the business records of Block Bank in connection with the facts set forth in this declaration.

3.     On or about January 31, 2007, Block Bank, through its agent and custodian, received from Option One Mortgage Corporation ("Option One"), now known as Sand Canyon Corporation ("Sand Canyon") an original consolidated adjustable rate note executed by Plaintiff Michael G. Robinson in the amount of $517,000.00 ("the CEMA Note").

4.     The CEMA Note was transferred and delivered to Block Bank with an Allonge indorsed by Option One in favor of Block Bank (the "Allonge").

5.     Block Bank, through its agent and custodian, received from Option One the original Consolidation, Extension and Modification Agreement executed by Plaintiffs Michael G. Robinson and Michelle Robinson (the "CEMA Mortgage") after Option One caused the CEMA Mortgage to be recorded with the City Register of the City of New York on or about February 12, 2007. **A true and accurate copy of the recorded CEMA Mortgage is attached hereto as Exhibit 1.**

6.     On or about January 31, 2007, Block Bank, through its agent and custodian, received from Option One the originals of the Adjustable Rate Note, as defined in the accompanying Dec. of D. Sugimoto in ¶ 4, the GAP Note, as defined in the accompanying Dec. of D. Sugimoto in ¶ 7, and the corresponding mortgage documents. **A true and accurate copy of the Adjustable Rate Note is attached hereto as Exhibit 2. A true and accurate copy of the GAP Note is attached hereto as Exhibit 3.**

7.     At the time of receipt, the Allonge was not stapled to the CEMA; however, on or about March 12, 2013, Block Bank stapled the Allonge to the CEMA Note. **A true and accurate copy of the original "wet ink" CEMA Note with stapled Allonge is attached hereto as Exhibit 4.**

8.     Block Bank is currently in possession of the original "wet-ink" CEMA Note with stapled Allonge and CEMA Mortgage.

9.     All payments made by Plaintiffs since the assignment of the CEMA Note to Block Bank, effective January 31, 2007, have been received by Block Bank and properly credited against Plaintiffs' outstanding principal and interest evidenced by the CEMA Note.

10.     Plaintiffs have not made any payments in connection with the CEMA Note since September 2012.

2

I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed this **2**ⁿᵈ day of March, 2013 in Kansas City, Missouri.

Greg Quarles, President
H&R Block Bank, FSB

3

Exhibit "1"

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2007011200228002001E9DCF

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 34 |
|---|---|---|
| Document ID: 2007011200228002 | Document Date: 12-21-2006 | Preparation Date: 01-12-2007 |
| Document Type: AGREEMENT | | |
| Document Page Count: 32 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| RIDGE ABSTRACT CORP. (CL ) | OPTION ONE MORTGAGE CORP. |
| AS AGENT FOR COMMONWEALTH LAND | P.O. BOX 57096 |
| TITLE COMPANY | ATT: QUALITY CONTROL |
| 1815 FLATBUSH AVENUE | IRVINE, CA 92619-7096 |
| BROOKLYN, NY 11210 | L566492K |
| 718-338-0065 | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 8110 | 39 | Entire Lot | | 9222 AVENUE B |
| | Property Type: DWELLING ONLY - 3 FAMILY | | | | |

**CROSS REFERENCE DATA**

CRFN: 2006000000239
  x  Additional Cross References on Continuation Page

**PARTIES**

| PARTY 1: | PARTY 2: |
|---|---|
| MICHAEL G. ROBINSON | OPTION MORTGAGE CORP. |
| 9222 AVENUE B | 3 ADA |
| BROOKLYN, NY 11236 | IRVINE, CA 92618 |
| | |
| x  Additional Parties Listed on Continuation Page | |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 517,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 0.00 | CITY OF NEW YORK | | |
| NYCTA: | $ | 0.00 | Recorded/Filed     02-12-2007 16:47 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | | 2007000082499 | |
| Recording Fee: | $ | 197.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

*Jeanette M Gill*

*City Register Official Signature*

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2007011200228002001E9DCF

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 34 |
|---|---|---|

**Document ID:** 2007011200228002
**Document Type:** AGREEMENT
**Document Page Count:** 32

**Document Date:** 12-21-2006

**Preparation Date:** 01-12-2007

| PRESENTER: | RETURN TO: |
|---|---|
| RIDGE ABSTRACT CORP. (CL )<br>AS AGENT FOR COMMONWEALTH LAND<br>TITLE COMPANY<br>1815 FLATBUSH AVENUE<br>BROOKLYN, NY 11210<br>718-338-0065 | OPTION ONE MORTGAGE CORP.<br>P.O. BOX 57096<br>ATT: QUALITY CONTROL<br>IRVINE, CA 92619-7096<br>L566492K |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 8110 | 39 | Entire Lot | | 9222 AVENUE B |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN: 2006000000239
x  Additional  Cross References on Continuation Page

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| MICHAEL G. ROBINSON<br>9222 AVENUE B<br>BROOKLYN, NY 11236 | OPTION MORTGAGE CORP.<br>3 ADA<br>IRVINE, CA 92618 |

x  Additional  Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 517,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK

| TASF: | $ | 0.00 |
|---|---|---|
| MTA: | $ | 0.00 |
| NYCTA: | $ | 0.00 |
| Additional MRT: | $ | 0.00 |
| TOTAL: | $ | 0.00 |
| Recording Fee: | $ | 197.00 |
| Affidavit Fee: | $ | 8.00 |

Recorded/Filed        02-12-2007 16:47
City Register File No.(CRFN):
                    2007000082499

*Annette M. Hill*

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|
| | 2007011200228002001C9F4F |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 34 |
|---|---|---|
| Document ID: 2007011200228002 | Document Date: 12-21-2006 | Preparation Date: 01-12-2007 |
| Document Type: AGREEMENT | | |

**CROSS REFERENCE DATA**
Document ID: 2007011200228001

**PARTIES**
PARTY 1:
MICHELLE ROBINSON
9222 AVENUE B
BROOKLYN, NY 11236

Return To:
OPTION ONE MORTGAGE CORP.
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN:   QUALITY CONTROL

Prepared By:

Loan Number: 331051385
Servicing Number: 002270790-5

*L 566492K*

# CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**
    (A) "Agreement." This document which is dated   December 21, 2006        and
exhibits and riders attached to this document will be called the "Agreement."
    (B) "Borrower."

      MICHAEL G ROBINSON AND MICHELLE ROBINSON, AS TENANTS BY THE ENTIRETY

will be called "Borrower" and sometimes "I" or "me." Borrower's address is
          9222   AVENUE B , BROOKLYN, NY  11236-1240
    (C) "Lender."
          Option One Mortgage Corporation, a California Corporation
will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under
the laws of  CALIFORNIA                         . Lender's
address is                  3 Ada, Irvine, CA  92618

    (D) "Mortgages." The mortgages, deeds of trusts, or other security instruments and any additional security
instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages)
identified in Exhibit A to this Agreement will be called the "Mortgages."
    (E) "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is
entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT - Single Family -
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1

Initials: _____
NYSIA41.wp (01-16-04)

Loan Number: 331051385    Servicing Number: 002270790-5    Date: 12/21/06

 (F) "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

 (G) "Property." The Property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

9222  AVENUE B
*[Street]*

BROOKLYN      .     Kings       .
*[City]*               *[County]*

NEW YORK,   11236-1240  .
*[State and Zip Code]*

 I promise and I agree with Lender as follows:

**I.**  **BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**

 I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 517,000.00   of this amount, U.S. $   54,673.66 was advanced to me (or for my account) immediately prior to this consolidation.

**II.**  **AGREEMENT TO COMBINE NOTES AND MORTGAGES**

 (A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

 (B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

   Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

**III.**  **AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE**

 Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to the Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

Initials:
NYSIA41.wp (01-16-0?)

Page 2

Loan Number: 331051385      Servicing Number: 002270790-5      Date: 12/21/06

IV.     AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE
        Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgages" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

V.      NO SET-OFF, DEFENSES
        I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

VI.     BORROWER'S INTEREST IN THE PROPERTY
        I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

VII.    WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT
        This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

VIII.   OBLIGATIONS OF BORROWER'S AND OF PERSONS TAKING OVER BORROWER'S OR
        LENDER'S RIGHTS OR OBLIGATIONS
        If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.
        The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

IX.     LIEN LAW
        I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

X.      TYPE OF PROPERTY
        Check box(es) as applicable.

        [X]     This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

        [ ]     This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

        [ ]     This Agreement does not cover real property improved as described above.

Initials _MR_ _NMR_

NYSIA41.wp (01-13-06)

Page 3

Loan Number: 331051385     Servicing Number:-002270790-5     Date:  12/21/06

By signing this Agreement, Lender and I agree to all of the above.

By: _____          _____ -Lender

Timothy Wilder

_____          _____ -Borrower
MICHAEL G ROBINSON          -Borrower


_____          _____
                    -Borrower          MICHELLE   ROBINSON          -Borrower


_____          _____
                    -Borrower                              -Borrower

NYSIA41.wp (01-16-04)

Loan Number: 331051385      Servicing Number: 002270790-5      Date:  12/21/06

STATE OF NEW YORK,                            *KINGS*            County ss:

On the  *22*  day of  *Dec*  *2006* before me, the undersigned, a notary public in and for said state, personally appeared

*Michael G Robinson & Michelle Robinson*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

KIM MARIE VOLPETTI
Notary Public, State of New York
No. 01VO6059921
Qualified in Kings County
Commission Expires June 8, 2007                          Notary Public

STATE OF NEW YORK,  *WESTCHESTER*                            County ss:

On the  *27th*  day of  *DECEMBER 2006*  before me, the undersigned, a notary public in and for said state, personally appeared

*TIMOTHY WILOOR*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

(LEE R. DAVIS)
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01DA4670032
QUALIFIED IN ROCKLAND COUNTY
COMMISSION EXPIRES FEB. 10, 2007

Tax Map Information:

NY51A41 wp (01-16-04)

EXHIBIT A
(List of Mortgages, Notes and Agreements)

(1)   This Mortgage given by MICHAEL G. ROBINSON AND MICHELLE
ROBINSON and dated DECEMBER 21, 2006 in favor of OPTION ONE
MORTGAGE CORPORATION securing the original principal amount of
U.S. $54,673.66.  This Mortgage will be recorded together with
this Agreement in the CLERK Of KINGS County, State of New York.
At this date, the unpaid principal balance secured by the
Mortgage is U.S.  $54,673.66.  This Mortgage secures a Note dated
DECEMBER 1, 2006.

(2)   This Mortgage given by MICHAEL G. ROBINSON AND MICHELLE
ROBINSON and dated NOVEMBER 28, 2005 in favor of OPTION ONE
MORTGAGE CORPORATION  securing the original principal amount of
U.S. $465,000.00.   This Mortgage was recorded on JANUARY 3, 2006
in the CLERK of KINGS County,  State of New York, at CRFN:
2006000000239. At this date, the unpaid principal balance secured
by this Mortgage is U.S. $462,326.34

Loan Number: 331051385    Servicing Number: 002270790-5    Date: 12/21/06

# EXHIBIT B
### (Property Description)

Address:  9222    AVENUE B,   BROOKLYN, NY 11236-1240

Legal Description:  SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A
PART THEREOF.

### Schedule A Description

Title Number **L566492K**                                Page    1

SECTION 24 BLOCK 8110 LOT 39 ON THE TAX MAP OF KINGS COUNTY

ALL that certain plot, piece or parcel of land with the buildings and improvements
thereon erected, situate, lying and being in the Borough of Brooklyn, County of
Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Southeasterly side of Avenue "B", distant 20 feet
Southwesterly from the corner formed by the intersection of the Southeasterly
side of Avenue "B" with the Southwesterly side of East 93rd Street;

RUNNING THENCE Southeasterly parallel with East 93rd Street and part of the
distance through a party wall, 100 feet;

THENCE Southwesterly parallel with Avenue "B", 20 feet;

THENCE Northwesterly parallel with East 93rd Street, 100 feet to the
Southeasterly side of Avenue "B";

THENCE Northeasterly along the Southeasterly side of Avenue "B", 20 feet to
the point or place of BEGINNING.

NYS1A41.wp (01-16-04)

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

**EXHIBIT C**
# CONSOLIDATED ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE AMENDS AND RESTATES IN THEIR ENTIRETY, AND IS GIVEN IN SUBSTITUTION FOR, THE NOTES DESCRIBED IN EXHIBIT A OF NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT DATED THE SAME DATE AS THIS NOTE. THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

9222    AVENUE B,    BROOKLYN, NY 11236-1240
[Property Address]

1.    BORROWER'S PROMISE TO PAY
    In return for a loan that I have received, I promise to pay U.S.    $517,000.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
        Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    INTEREST
    Interest will be charged on unpaid principal until the full amount of principal has been paid.  Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of  6.150%    . The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.    PAYMENTS
    (A) Time and Place of Payments
    I will pay principal and interest by making payments every month.
    I will make my payments on the first day of each month beginning on    February 01, 2007    .
I will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached Balloon Note Addendum, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
January 01, 2037    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at    Option One Mortgage Corporation
            Department 7821  Los Angeles, CA  90064-7821
or at a different place if required by the Note Holder.
    (B) Amount of My Initial Monthly Payments
    Each of my initial monthly payments will be in the amount of U.S. $2,898.85    . This amount may change.
    (C) Monthly Payment Changes
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
    (D) Application of Payments
    Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
    (A) Change Dates
    The interest rate I will pay may change on the first day of    January 01, 2012    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
    (B) The Index
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding   SIX
percentage point(s) (   6.000%   ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          9.150%          or less than   6.000%   . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than          12.150%          or less than   6.000%   .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.     BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

*** PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF ***

6.     LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7.     BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

(C) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.     GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

9.      OBLIGATIONS OF PERSONS UNDER THIS NOTE

         If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.     WAIVERS

         I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.     SECURED NOTE

         In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

         Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

         To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

         If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHAEL G ROBINSON                -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

                                  *[Sign Original Only]*

Loan Number:  331051385          Servicing Number:  002270790-5          Date:  12/21/06

# BALLOON NOTE ADDENDUM

This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.


Michael G Robinson
_____
Borrower   MICHAEL G ROBINSON

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower


NEW YORK CEMA BALLOON NOTE ADDENDUM
Page 1 of 1

NYD5641.wp (11-30-06)

Loan Number: 331051385          Servicing Number: 002270790-5     Date: 12/21/06

## PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by Borrower in favor of:

Option One Mortgage Corporation, a California Corporation

(the "Lender"), and dated as of even date herewith (the "Note"). To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provision of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note.

SECTION 5 of the Note is amended to read in its entirety as follows:

5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment." When I make a Full Prepayment or Partial Prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a Partial Prepayment, there will be changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within 12 months from the date of execution of the Security Instrument I make a Full Prepayment or, in certain cases a Partial Prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months' advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

| | | | |
|---|---|---|---|
| _Michael G Robinson_ | 12/21/06 | | |
| Borrower   MICHAEL G ROBINSON | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |

*(Sign Original Only)*

NEW YORK PREPAYMENT CHARGE NOTE ADDENDUM - Balloon Adjustable Rate Note
Page 1 of 1                                                                                   NYP1041.wp (11-21-06)

EXHIBIT D

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORP.
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN:   QUALITY CONTROL

Loan Number: 331051385
Servicing Number: 002270790-5

## CONSOLIDATED MORTGAGE

☐ THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

☒ THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED WITH A STRUCTURE CONTAINING SIX RESIDENTIAL UNITS OR LESS, EACH DWELLING UNIT HAVING ITS OWN COOKING FACILITIES.

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated   December 21, 2006   , will be called the "Security Instrument."
(B) "Borrower."
  MICHAEL G ROBINSON AND MICHELLE ROBINSON, AS TENANTS BY THE ENTIRETY

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."   Option One Mortgage Corporation, a California Corporation

will be called "Lender." Lender is a corporation or association which exists under the laws of CALIFORNIA . Lender's address is
        3 Ada, Irvine, CA  92618
(D) "Note." The note signed by Borrower and dated  December 21, 2006        , will be called the "Note." The Note shows that I owe Lender  FIVE HUNDRED SEVENTEEN THOUSAND
                . . .AND NO/100THs
                Dollars (U.S. $517,000.00            ) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by January 01, 2037 .
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."
(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

NEW YORK - Single Family
Page 1 of 14                                                NYSIM41.wp (01-16-04)

Loan Number: 331051385     Servicing Number: 002270790-5     Date: 12/21/06 –

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:
(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument.

**DESCRIPTION OF THE PROPERTY**
I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at                                    9222      AVENUE B                    ,
                                                                           [Street]
              BROOKLYN                 , New York   11236-1240                        . This Property is in
               [City]                                [Zip Code]
                                          Kings                       County. It has the following legal description:

BLK 8110 LOT 39

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

NYSIM41.wp (01-16-04)

Loan Number: 331051385    Servicing Number: 002270790-5    Date: 12/21/06

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### PLAIN LANGUAGE SECURITY INSTRUMENT
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

### COVENANTS
I promise and I agree with Lender as follows:

### 1. BORROWER'S PROMISE TO PAY
I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

### 2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE
(A) Borrower's Obligations
I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in

NYSIM41.wp (01-16-04)

Loan Number: 331051385     Servicing Number: 002270790-5     Date: 12/21/06

an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(B) Lender's Obligations**
Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

**(C) Adjustments to the Funds**
Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

## 3. APPLICATION OF BORROWER'S PAYMENTS
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes: First, to pay any prepayment charges due under the Note; Next, to pay the amounts due to Lender under Paragraph 2 above; Next, to pay interest due; Next, to pay principal due; and Last, to pay any late charges due under the Note.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS
I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and if I am a ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed

Loan Number: 331051385     Servicing Number: 002270990-5     Date: 12/21/06

them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

NYSIM41.wp [01-16-04]

Loan Number: 331051385     Servicing Number: 002270790-5     Date: 12/21/06

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION
### (A) Borrower's Obligations to Occupy the Property
Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

### (B) Borrower's Obligations to Maintain and Protect the Property
I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

### (C) Borrower's Obligations to Fulfill Any Lease Obligations
If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

### (D) Borrower's Loan Application
If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

NYSIM41.wp (01-16-04)

Loan Number: 331051385      Servicing Number: 002270790-5      Date: 12/21/06

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured

Page 7 of 14                                                                 NYSIM41.wp (01-16-03)

Loan Number: 331051385-     Servicing Number: 002270790-5     Date: 12/21/06

immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
### (A) Borrower's Obligations
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or

NYSIM41.wp (01-16-04)

Loan Number: 331051385      Servicing Number: 002270790-5      Date: 12/21/06

make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

### 13. LOAN CHARGES
If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT
This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

### 16. BORROWER'S COPY
I will be given one conformed copy of the Note and of this Security Instrument.

### 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

### 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED
Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale

Loan Number: 331051385      Servicing Number: 002270790-5      Date: 12/21/06

granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and
(C) I pay all of Lender' s reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

## 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER
The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

## 20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY
The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

Page 10 of 14                                                    NYSIM41.wp (01-16-04)

Loan Number: 331051385     Servicing Number: 002270790-5     Date: 12/21/06

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

### 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 17, above, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If any installment under the Note or notes, secured hereby is not paid when due, or if Borrower should be in default under any provision of this security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

### 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. To the extent permitted by applicable law, I will be required to pay Lender a fee for the discharge and for all costs of recording the discharge in the proper official records.

### 23. MISREPRESENTATION AND NONDISCLOSURE

Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

### 24. TIME IS OF THE ESSENCE

Time is of the essence in the performance of each provision of this Security Instrument.

### 25. WAIVER OF STATUTE OF LIMITATIONS

The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

### 26. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

NYSIM41.wp (01-16-04)

Loan Number:  331051385      Servicing Number:  002270790-5      Date:  12/21/06

## 27. REIMBURSEMENT

To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien discharge and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

## 28. CLERICAL ERROR

In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

## 29. LOST STOLEN, DESTROYED OR MUTILATED SECURITY INSTRUMENT AND OTHER DOCUMENTS

In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

## 30. ASSIGNMENT OF RENTS

As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

## 31. ATTORNEYS' FEES

As used in this Security Instrument and the note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

## 32. AGREEMENTS ABOUT NEW YORK LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund";

Page 12 of 14

NYSIM41.wp (01-14-06)

Loan Number: 331051385    Servicing Number: 002270790-5    Date: 12/21/06

and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

## 33. RIDERS TO THIS SECURITY INSTRUMENT

If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument.

[Check applicable box(es)]

[X] Adjustable Rate Rider    [ ] Condominium Rider    [X] 1-4 Family Rider
[ ] Manufactured Home Rider    [ ] Planned Unit Development Rider    [ ] Occupancy Rider
[ ] Other(s) (specify)

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 8 of this Security Instrument and in any rider(s) signed by me and recorded with it.

_____ (Seal)    _____ (Seal)
MICHAEL G ROBINSON    -Borrower    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    MICHELLE ROBINSON    -Borrower

_____ (Seal)    _____ (Seal)
-Borrower    -Borrower

### UNIFORM, ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
(Within New York State)

STATE OF NEW YORK )
County of _____ ) ss.:

On the ___ day of _____ in the year _____ before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

KIM MARIE VOLPE
Notary Public, State of New York
No. 01VO6053992
Qualified in Kings County
Commission Expires June 6, 2007

Signature and Office of Individual taking acknowledgement

OR

Page 13 of 14    NYSIM41.wp (10-03-03)

Loan Number:  331051385          Servicing Number:  002270790-5          Date:  12/21/06

# BALLOON RIDER

This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.


_____         _____
MICHAEL G ROBINSON         -Borrower                                      -Borrower

_____         _____
                           -Borrower         MICHELLE   ROBINSON         -Borrower

_____         _____
                           -Borrower                                      -Borrower


MULTISTATE BALLOON RIDER
Page 1 of 1                                                      USR1091.wp (05-19-05)

Loan Number: 331051385     Servicing Number: 002270790-5     Date: 12/21/06

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made December 21, 2006                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
        Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

        9222    AVENUE B,   BROOKLYN, NY 11236-1240
                        [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of            6.150%                    . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES
        (A) Change Dates
        The interest rate I will pay may change on the first day of    January 01     2012           ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
        (B) The Index
        Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
        If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
        (C) Calculation of Changes
        Before each Change Date, the Note Holder will calculate my new interest rate by adding
        SIX                                percentage point(s) ( 6.000%   )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                    USRID021 (02-23-99)

Loan Number:  331051385     Servicing Number:  002270790-5     Date:  12/21/06

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than

9.150%   or less than   6.000%                  . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than      12.150%      or less than   6.000%          .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3                                                    USRJ0022 (02-23-99)

Loan Number: 331051385     Servicing Number: 002270790-5     Date: 12/21/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
MICHAEL G ROBINSON

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)
MICHELLE   ROBINSON

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3                                                              USRJ0023 (02-23-99)

Loan Number: 331051385       Servicing Number: 002270790-5       Date: 12/21/06

## 1-4 FAMILY RIDER
### Assignment of Rents

THIS 1-4 FAMILY RIDER is made    December 21, 2006        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Option One Mortgage Corporation, a California Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

9222   AVENUE B,   BROOKLYN, NY 11236-1240

(Property Address)

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: Building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.    USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.    SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.    RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Covenant 5.

**E.    "BORROWER'S RIGHT TO REINSTATE" DELETED.** Covenant 18 is deleted.

**F.    BORROWER'S OCCUPANCY.** Unless lender and Borrower otherwise agree in writing, the first paragraph in Covenant 6 concerning Borrower's occupancy of the property is deleted. All remaining

MULTISTATE 1-4 FAMILY RIDER
Page 1 of 3                                                          USR1001.wp (11-19-04)

Loan Number: 331051385      Servicing Number: 002270790-5      Date: 12/21/06

Covenants and agreements set forth in Covenant 6 shall remain in effect.

**G.    ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph F, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.    ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of its intention to receive Rents after a default by borrower under the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of its intention to receive Rents to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This Assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.    "ASSIGNMENT OF RENTS" MODIFIED.** Any Covenant of the Security Instrument granting an Assignment of Rents to Lender is superseded by this Rider.

**J.    CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

MULTISTATE 1-4 FAMILY RIDER

Page 2 of 3                                                                                    USR1001.wp (11-19-04)

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.



_____          _____
MICHAEL G ROBINSON          Borrower                                         Borrower

_____          _____
                            Borrower          MICHELLE  ROBINSON          Borrower

_____          _____
                            Borrower                                         Borrower

MULTISTATE 1-4 FAMILY RIDER
Page 3 of 3                                                    USR1001.wp (11-19-04)

Exhibit "2"

Loan Number:   331043382        Servicing Number:   002002432-9        Date:  11/28/05

## ADJUSTABLE RATE NOTE
### (LIBOR Index – Rate Caps)

# ORIGINAL

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

9222  AVENUE B,  BROOKLYN, NY 11236-
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S.    $465,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
        Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
    Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of    6.650%  . The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**
    **(A) Time and Place of Payments**
    I will pay principal and interest by making payments every month.
    I will make my monthly payments on the first day of each month beginning on  February 01    ,  2006    . I will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached Balloon Note Addendum, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
 January 01      ,  2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at    Option One Mortgage Corporation
            P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments will be in the amount of U.S.    $2,772.22    . This amount may change.
    **(C) Monthly Payment Changes**
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
    **(D) Application of Payments**
    Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the first day of    January 01        ,  2011    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Loan Number:   331043382        Servicing Number:   002002432-9        Date:  11/28/05

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
FIVE AND 25/100                                                         percentage point(s) ( 5.250%        )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   9.650%        or less than
6.650%       . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than   12.650%       or less than   6.650%        .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF**

6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.000%       of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

(C) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

NYNT071.wp (06-30-05)

Loan Number:   331043382      Servicing Number:   002002432-9      Date:   11/28/05

10.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Michael G Robinson_
_____(Seal)          _____(Seal)
MICHAEL G ROBINSON            -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                              -Borrower                                        -Borrower

_____(Seal)          _____(Seal)
                              -Borrower                                        -Borrower

[Sign Original Only]

NYNT071.wp (06-30-05)

Loan Number: 331043382          Servicing Number: 002002432-9          Date: 11/28/05

## PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by Borrower in favor of

(the "Lender"), and dated as of even date herewith (the "Note"). To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provision of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note.

Section 5 of the Note is amended to read in its entirety as follows:

5.      Borrower's Right to Prepay
        I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
        If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
        If within 12 months from the date of execution of the Security Instrument I make a full prepayment or, in certain cases, a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge if authorized by state or federal law. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note.


_Michael G Robi_____          _____
MICHAEL G ROBINSON          Borrower                                        Borrower


_____          _____
                            Borrower                                        Borrower


_____          _____
                            Borrower                                        Borrower


                                        (Sign Original Only)


NEW YORK PREPAYMENT CHARGE NOTE ADDENDUM - Adjustable Rate Note
Page 1 of 1                                              NYP1021.wp (12-01-04)

Loan Number:  331043382          Servicing Number:  002002432-9          Date:  11/28/05

# BALLOON NOTE ADDENDUM

This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.


Borrower   MICHAEL G ROBINSON                    Borrower

_____                        _____
Borrower                                         Borrower

_____                        _____
Borrower                                         Borrower


MULTISTATE BALLOON NOTE ADDENDUM
Page 1 of 1

USD5641.wp (05-19-05)

Exhibit "3"

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

# GAP ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

9222     AVENUE B,   BROOKLYN, NY 11236-1240
[Property Address]

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.        $54,673.66        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

Option One Mortgage Corporation, a California Corporation

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of   6.150%   . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.    PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   February 01, 2007   . I will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached Balloon Note Addendum, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, January 01, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  Option One Mortgage Corporation
Department 7821  Los Angeles, CA  90084-7821       or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $306.56       . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

(D) Application of Payments

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

### 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of        January        , 2012   , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

ORIGINAL

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.150% or less than 6.000% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 12.150% or less than 6.000% .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

***PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF***

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this

NYNT191.wp (11-30-06)

Loan Number:  331051385          Servicing Number:  002270790-5          Date: 12/21/06

Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.   **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
MICHAEL G ROBINSON                  -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                            -Borrower

*[Sign Original Only]*

Loan Number:  331051385          Servicing Number:  002270790-5          Date:  12/21/06

# BALLOON NOTE ADDENDUM

This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.

_____          _____
Borrower   MICHAEL G ROBINSON              Borrower


_____          _____
Borrower                                   Borrower


_____          _____
Borrower                                   Borrower


MULTISTATE BALLOON NOTE ADDENDUM
Page 1 of 1                                              USD5641.wp (05-19-05)

ORIGINAL

Loan Number: 331051385     Servicing Number: 002270790-5     Date: 12/21/06

# PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by Borrower in favor of:
                Option One Mortgage Corporation, a California Corporation
(the "Lender"), and dated as of even date herewith (the "Note"). To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provision of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note.

SECTION 5 of the Note is amended to read in its entirety as follows:

5.   BORROWER'S RIGHT TO PREPAY
     I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment." When I make a Full Prepayment or Partial Prepayment, I will tell the Note Holder in writing that I am doing so.
     If I make a Partial Prepayment, there will be changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
     If within 12 months from the date of execution of the Security Instrument I make a Full Prepayment or, in certain cases a Partial Prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months' advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.


| | | | |
|---|---|---|---|
| _Michael G Robinson_  12/21/06 | | | |
| Borrower MICHAEL G ROBINSON     Date | | Borrower                          Date | |
| | | | |
| Borrower                          Date | | Borrower                          Date | |
| | | | |
| Borrower                          Date | | Borrower                          Date | |

*(Sign Original Only)*

NEW YORK PREPAYMENT CHARGE NOTE ADDENDUM - Balloon Adjustable Rate Note
Page 1 of 1                                                    NYP1041.wp (11-21-06)



Exhibit "4"

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

# CONSOLIDATED ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE AMENDS AND RESTATES IN THEIR ENTIRETY, AND IS GIVEN IN SUBSTITUTION FOR, THE NOTES DESCRIBED IN EXHIBIT A OF NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT DATED THE SAME DATE AS THIS NOTE. THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

9222    AVENUE B,    BROOKLYN, NY 11236-1240
[Property Address]

1.    BORROWER'S PROMISE TO PAY
      In return for a loan that I have received, I promise to pay U.S.    $517,000.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
                Option One Mortgage Corporation, a California Corporation          .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    INTEREST
      Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of  6.150%  . The interest rate I will pay may change in accordance with Section 4 of this Note.
      The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.    PAYMENTS
      (A) Time and Place of Payments
      I will pay principal and interest by making payments every month.
      I will make my monthly payments on the first day of each month beginning on  February 01, 2007  . I will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached Balloon Note Addendum, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on  January 01, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
      I will make my monthly payments at   Option One Mortgage Corporation
                      Department 7821  Los Angeles, CA  90084-7821
or at a different place if required by the Note Holder.
      (B) Amount of My Initial Monthly Payments
      Each of my initial monthly payments will be in the amount of U.S. $2,898.85   . This amount may change.
      (C) Monthly Payment Changes
      Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
      (D) Application of Payments
      Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
      (A) Change Dates
      The interest rate I will pay may change on the first day of  January 01, 2012   , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
      (B) The Index
      Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

NEW YORK CONSOLIDATED ADJUSTABLE RATE BALLOON NOTE-LIBOR INDEX - Single Family
Page 1 of 3                                                                    NYNT171.wp (11-30-06)

# ORIGINAL

Loan Number: 331051385          Servicing Number: 002270790-5          Date: 12/21/06

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX percentage point(s) ( 6.000% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   9.150%   or less than   6.000%  . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than   12.150%   or less than   6.000%  .

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

*** PREPAYMENT CHARGE NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF ***

6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

(C) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Page 2 of 3

NYNT171.wp (11-30-06)

Loan Number: 331051385        Servicing Number: 002270790-5        Date: 12/21/06

9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    WAIVERS

    I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    SECURED NOTE

    In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
MICHAEL G ROBINSON                -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                  -Borrower                                        -Borrower

*[Sign Original Only]*

Loan Number:  331051385        Servicing Number:  002270790-5        Date:  12/21/06

# BALLOON NOTE ADDENDUM

This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.

Borrower   MICHAEL G ROBINSON

Borrower

Borrower

Borrower

Borrower

Borrower

NEW YORK CEMA BALLOON NOTE ADDENDUM
Page 1 of 1

NYD5641.wp (11-30-06)



Loan Number: 331051385        Servicing Number: 002270790-5    Date: 12/21/06

# PREPAYMENT CHARGE NOTE ADDENDUM

For value received, the undersigned (the "Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Note made by Borrower in favor of:
                    Option One Mortgage Corporation, a California Corporation
(the "Lender"), and dated as of even date herewith (the "Note"). To the extent that the provisions of this Prepayment Charge Note Addendum (the "Addendum") are inconsistent with the provision of the Note, the provisions of this Addendum shall prevail over and shall supersede any such inconsistent provisions of the Note.

SECTION 5 of the Note is amended to read in its entirety as follows:

5.  BORROWER'S RIGHT TO PREPAY
    I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment." When I make a Full Prepayment or Partial Prepayment, I will tell the Note Holder in writing that I am doing so.
    If I make a Partial Prepayment, there will be changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
    If within 12 months from the date of execution of the Security Instrument I make a Full Prepayment or, in certain cases a Partial Prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months' advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.


| Michael G Robinson          12/21/06 | |                              | |
|-------------------------------------|--|------------------------------|--|
| Borrower  MICHAEL G ROBINSON    Date | | Borrower                Date | |
| Borrower                        Date | | Borrower                Date | |
| Borrower                        Date | | Borrower                Date | |

*(Sign Original Only)*

NEW YORK PREPAYMENT CHARGE NOTE ADDENDUM - Balloon Adjustable Rate Note
Page 1 of 1                                                    NYP1041.wp (11-21-06)


ORIGINAL

Loan Number: 331051385         Servicing Number: 002270790-5         Date: 12/21/06

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: MICHAEL G ROBINSON
Loan #: 331051385
Property Address: 9222   AVENUE B,   BROOKLYN, NY 11236-1240
Loan Amount: $517,000.00

Note Date: 12/21/06

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:         H & R Block Bank, FSB                Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
        Sherma Green

    Assistant Secretary

ORIGINAL

Page 1 of 1                                                        USD3050.wp (03-14-03)